**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABLE HOME HEALTH, LLC, | ) | |
| on behalf of Plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 2590 |
| v. | ) | |
| | ) | |
| WILLAMETTE VALLEY | ) | |
| TOXICOLOGY LLC, | ) | |
| doing business as WVT LABORATORY, | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**PETITION FOR ATTORNEY'S FEES**

Pursuant to the parties' settlement agreement in this case, Class Counsel respectfully requests approval of payment of attorney's fees of $44,125.00, which represents 1/3 of the Settlement Fund less notice and administrative expenses ($138,375.00 (Settlement Fund) - $6,000.00 (Notice and Administrative Expenses)[1] = $132,375.00 (Net Settlement Fund) x 1/3 = $44,125.00). Counsel for Plaintiff Able Home Health, LLC include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter ("Litigation").

**I.    THE ATTORNEY'S FEES ARE REASONABLE.**

The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001); *Americana Art China*

---

[1] Notice and administration expenses are estimated at $6,000.00. In the event that the expenses, are less than $6,000.00, plaintiff respectfully requests 1/3 of the Net Settlement Fund.

*Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (quoting *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994), "[W]e are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. . . .[T]he decision whether to use a percentage method or a lodestar method remains in the discretion of the district court."). While a district court may use the lodestar method, the percentage of recovery method, or some combination of the two, *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 n. 2 (7th Cir. 1995) "'[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class especially where the percentage accurately reflects the market." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011) ("*Kentucky Chicken*") (internal quotations omitted) (holding that a fee request which represented approximately 32.7% of the fund created by the settlement was both "reasonable" and "arguably below the norm" of market rate for contingency fee cases of 33 1/3-40% *plus* the cost of litigation). "Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market" is "33.33% of the common fund recovered." *Kentucky Chicken*, 280 F.R.D. at 381 (Internal quotation omitted), is consistent with the 33.33% that Class Counsel is seeking here.

    **A.    The Common Fund Method**.

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace. Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different. It is well established that when a representative party has created a

"common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re: Synthroid Marketing Litigation*, 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re: Synthroid Marketing Litigation*, 264 F.3d at 718.

The Seventh Circuit in *Synthroid* explained that determination of the market rate for the legal fees should be based in part on the following factors:

> The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.

*Id. at* 721.

Plaintiff's counsel took on the Litigation on a contingent fee basis, and thus were faced with a significant risk of non-payment. The Litigation has been pending for over six months. A fee request of 1/3 of the Settlement Fund less notice and administrative expenses is also consistent with the marketplace. The market rate for contingent fees in consumer cases such as this is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

Under the common fund approach, "the district court must consider how much compensation class counsel should receive for incurring the risk of nonpayment when it took the suit." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). This case was prosecuted by Plaintiff's counsel on a contingent fee basis with no assurance of any fee. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel <u>must</u> be compensated adequately for the risk of non-payment; *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

In the Litigation, Class Counsel filed a well-researched complaint alleging claims for relief under state and federal law. After defendant appeared, the parties engaged in informal discovery to identify the size and nature of any potential class.

Following settlement negotiations, the parties entered into a Settlement Agreement which Plaintiff submits confers substantial economic relief to all class members. The parties jointly drafted and approved the settlement documents. At the time of the settlement, the parties' respective theories of the case were known and well-developed.

Each member of the Settlement Class who does not opt out or otherwise exclude themself and who is successfully sent the Class Notice by fax or U.S. Mail, will receive a pro rata distribution of the Settlement Class Recovery based on the number of fax transmission that were sent to that class members ("Initial Distribution"). If the Notice is successfully sent to all Settlement Class Members and no one submits a request to opt out of the Settlement, each class member will receive approximately $164.00 per fax transmission, which is 32% of the statutory

4

damages recoverable under the Telephone Consumer Protection Act for a non-willful violation. If 5% of the settlement class submit a request to opt out, each class member will receive approximately $173.00 per fax transmission.

If after the Initial Distribution, there is sufficient money remaining in the Settlement Class Recovery to pay each Settlement Class Member who cashed his/her/its Initial Distribution payment a minimum of $15.00 each, then there shall be a second *pro rata* distribution of the Settlement Class Recovery to the Settlement Class Members who did not opt out. Thereafter, any unclaimed or undistributed settlement funds will be distributed to one or *cy pres* charities recommended by the parties and approved by this Court. There will be no reversion of funds to the Defendant. In light of the work performed in this matter, Class Counsel's request for at least $44,125.00, which represents 1/3 of the Net Settlement Fund based on an estimate of $6,000.00 in administrative expenses, is reasonable.

Due to the fact that Class Counsel's compensation is entirely contingent, the fees being requested are within the typical market range in such contingency fee cases, the risk counsel faced recovering on the claims alleged, and the substantial recovery negotiated for the class, the Court should award $44,125.00 or 1/3 of the Net Settlement Fund, in attorney's fees as requested from the Settlement Fund.

II. **CONCLUSION**.

For all the reasons set forth above, Class Counsel respectfully requests that this Court grant the fee petition at the time of final approval of the class action settlement.

Respectfully submitted,

*s/ Heather Kolbus*
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Heather Kolbus, hereby certify that on December 8, 2021, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to the following party:

Bart Thomas Murphy- bart.murphy@icemiller.com
ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL  60532

*s/ Heather Kolbus*
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
**EDELMAN, COMBS, LATTURNER**
       **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)